**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 13-0239 DOC (MLGx)                                            Date: February 13, 2013

Title: MEGGITT (SAN JUAN CAPISTRANO), INC., v. NIE YONGZHONG et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING TEMPORARY RESTRAINING ORDER

      Before the Court is Plaintiff's Ex Parte Application for Temporary Restraining and Order to Show Cause (Dkt. 7) filed by Meggit, Inc. ("Plaintiff").  The Court finds this matter appropriate for decision without oral argument.  Fed R. Civ. P. 78; Local R. 7-15.  After consideration of Plaintiff's Motion (Dkt. 7) andComplaint (Dkt. 1), the Court DENIES the Motion.

      **I.**      **Background**

      Plaintiff filed a Complaint on February 11, 2013, alleging that Defendant Nie Yongzhong, aka William Nie, a former employee of Plaintiff, and Defendant Xiamen Niell Electronics Co., Ltd. (collectively, "Defendants"), misappropriated trade secrets involving the design and assembly of sensor products.  *See* Compl. (Dkt. 1).  Plaintiff filed this Ex Parte Application for a Temporary Restraining order the next day, on February 12, 2013.  *See* Pl's Ex Parte App. (Dkt. 7).  Plaintiff is seeking immediately to enjoin Defendants from marketing, selling, or offering for sale at least 8 separate products currently marketed or sold by Defendant, and also seeking the return of proprietary documents and confidential information.  *See id.*

      Plaintiff's allegations suggest that Defendants' theft of trade secrets occurred in "early 2010," that Defendants applied for Chinese patents on infringing products in 2010, and that the manufacture and sale of the products at issue has been going on at least long enough for Defendants to have set in motion an "aggressive marketing campaign" and sold the products on several websites.  *See*

*id.* at 3-6. Plaintiff also references a trade show that is occurring in Garden Grove from February 11-14, 2013, at which Defendants are allegedly marketing and selling the products at issue. *See* Pl's Mem. (Dkt. 7-2). However, Plaintiff does not appear to argue that any new harm will flow from Defendants' participation in the trade show, other than the continued sale and marketing of pirated products that have already been sold and marketed world-wide on the internet for an unspecified length of time.

## II.   Legal Standard for Temporary Restraining Order

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952). The standard for granting a temporary restraining order "is identical to the standard for issuing a preliminary injunction." *Brown Jordan Intern. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Hawai'i 2002).

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff has the burden to establish: (1) a likelihood of success on the merits; (2) a likelihood to suffer irreparable harm if the preliminary relief is not granted; (3) a balance of the equities favors the plaintiff; and (4) that the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Where, as here, the application for the temporary restraining order is made *ex parte*, Rule 65 mandates an additional showing that: (1) "immediate and irreparable injury. . . will result to the movant before the adverse party can be heard in opposition;" and (2) the movant must explain in writing the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). The standard for issuing a temporary restraining order without notice to the adverse party is very stringent, and the burden on the movant to show why notice is not required is accordingly very high. *See Granny Goose Foods, Inc. v. Broth. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) ("[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."); *Reno Air Racing Ass'n*, 452 F.3d at 1131 ("[C]ircumstances justifying the issuance of an ex parte order are extremely limited.").

The most common reasons for issuing an *ex parte* temporary restraining order are "where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing" and "a very narrow band of cases in

which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984).

### III.  Discussion

Plaintiff does not explain the reasons why it must seek its temporary restraining order *ex parte*, and such an explanation is required by Federal Rule Civil Procedure 65(b)(1).  Notice to the adverse party is not "impossible," and notice and an opportunity to be heard would not "render fruitless the further prosecution of the action."  *See Reno Air Racing*, 452 F.3d at 1131 (internal quotation omitted).  Plaintiff argues that Defendants ongoing sale of pirated products and ongoing possession of secret documents creates a likelihood of irreparable harm, but fails to argue why immediate and drastic action must be taken by this Court, particularly in light of the fact that all allegedly stolen trade secrets have been in Defendants' possession for over two years, and sales of Defendants' products have been widespread for an unspecified length of time, according to Plaintiff's own supporting documents.

Accordingly, the Court DENIES Plaintiff's Motion.

To the extent that Plaintiff wishes to pursue injunctive relief, the Court sets a hearing on the matter for March 25, 2013, at 8:30am.  Plaintiff will file a Motion for Preliminary Injunction at least 28 days prior to the hearing date, and oppositions and replies may be filed according to deadlines set out in the Local Rules.

The Clerk shall serve this minute order on the parties.