**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 13-0239 DOC (MLGx)   Date: September 26, 2013

Title: MEGGITT (SAN JUAN CAPISTRANO), INC., v. NIE YONGZHONG et al.

PRESENT:   THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT            NONE PRESENT

PROCEEDING (IN CHAMBERS):   ORDER REGARDING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Before the Court is a Motion for Preliminary Injunction and Expedited Discovery (Dkt. 16) filed by Meggitt San Juan Capistrano, Inc. ("Plaintiff" or "Meggitt SJC").   After considering all briefing on the matter, and after a hearing, the Court will GRANT Plaintiff's Motion.

**I.   Background**

**a.   The Underlying Facts**

This is a trade secrets case in which Plaintiff Meggitt SJC (doing business as "Meggitt Sensing Systems" and formerly known as "Endevco Corporation"), the American subsidiary of a British corporation that manufactures high-tech sensor equipment, alleges that an individual Defendant, Nie Yongzhong, who formerly worked for the Chinese subsidiary of the same British corporation ("Meggitt Xiamen"), stole Meggitt SJC's trade secrets and brought them to the Corporate Defendant Xiamen Niell Electronics" ("Niell-Tech"), a Chinese corporation founded and run by Nie.

Plaintiff Meggitt SJC designs and manufactures sensors and accelerometers for vibration, shock, and pressure measurements, and has, since 2003, manufactured its products at Meggitt Xiamen in China.  Plaintiff alleges that Defendant Nie, an engineer at Meggitt Xiemen from October 17, 2005, through August 15, 2011, obtained Meggitt SJC's trade secret information through his employment at Meggitt Xiamen by, among other things, visiting Meggitt SJC in California and by participating in regular videoconferences with Meggitt SJC employees in California.  Specifically, Plaintiff alleges that Defendant Nie secretly founded a separate company in China, corporate defendant Niell-Tech, in April

of 2010; that Nie improperly disclosed Meggitt SJC's trade secret information to Niell-Tech; that Niell-Tech (under Nie's direction) manufactured several products using Meggitt SJC's trade secret information; and that Niell-Tech marketed and offered those products for sale at a trade show in California and over internet websites directed at California consumers.

### b. The Complaint and the Current Motion

Plaintiff filed a complaint (Dkt. 1) against Defendants seeking damages and injunctive relief for violations of Cal. Civ. Code §§ 3426, et seq. (Misappropriation of Trade Secrets); Cal. Bus. & Prof. Code §§ 17200, et seq. (Unfair Competition); Breach of the Duty of Loyalty; and Conversion. *See* Compl. Plaintiff subsequently filed the present motion seeking a preliminary injunction halting the production and sale of Niell-Tech products that utilize Meggitt SJC's trade secrets, as well as expedited discovery. Initially, Defendants failed to oppose, prompting the Court to issue a Minute Order (Dkt. 24) requiring Defendants to respond "on or before March 8, 2013," and stating that "if no opposition is filed, the Court is inclined to grant Plaintiff's unopposed motion." Defendants again missed their deadline. However, on March 11, 2013, the Court received several documents that were rejected as improperly filed—while none of those documents was an opposition to Plaintiff's motion, they did appear to contest this Court's jurisdiction to hear the case. On March 18, 2013, the Court issued another Minute Order (Dkt. 29) giving Defendants one more chance to file an opposition on or before March 20, 2013. Defendants missed that deadline as well.

Finally, on March 22, 2013, on the Friday afternoon before a Monday hearing, Defendants filed an Opposition (Dkt. 35) arguing, among other things, that the Court does not have jurisdiction over the case because (1) Plaintiff's California claims do not have extraterritorial effect in China; and (2) because diversity jurisdiction does not exist since Plaintiff should properly have sued Meggitt Xiamen, not Meggitt SJC. *See* Opp'n at 3-5.

At a hearing on March 25, 2013, the Court stated that, because Defendants filed no timely opposition, the Court was prepared to accept as true all factual allegations and declarations made by Plaintiff in support of its motion. However, because jurisdictional issues should be addressed before a preliminary injunction could issue, Defendants would be granted one additional Supplemental Opposition to address jurisdictional issues. In the event that there was no jurisdictional defect, and because Plaintiff had otherwise satisfied the requirements for a preliminary injunction, the Court was prepared to issue Plaintiff's requested injunction. Defendant submitted its supplemental opposition (Dkt. 36), and Plaintiff's filed a supplemental reply (Dkt. 39).

## II. Discussion

### a. Defendants' Jurisdictional Arguments Lack Merit

#### i. Extraterritoriality

Defendants first argue that, because "Mr. Nie is a resident of China and was hired by Meggitt Xiamen . . . also in China," and because "[Niell-Tech] is also located in China," the California

trade secret statute "should have no effect on activities occurring within Chinese borders." Supp. Opp'n at 3.

First, Defendants misstate the facts. Plaintiff alleged and submitted declarations showing that Nie stole Meggitt SJC's trade secrets, not Meggitt Xiamen's trade secrets, from Meggitt SJC in California, by visiting Meggitt SJC's site in California and by appearing at regular videoconferences with Meggitt SJC employees at which the trade secrets were discussed and disclosed. Taking Plaintiff's allegations and declarations as true, alleged misappropriation occurred in California.

Further, Plaintiff alleges and submits declarations showing that Defendants marketed and sold goods that embody Meggitt SJC's trade secrets at trade shows in California. In construing state laws based on the Uniform Trade Secrets Act ("UTSA"), like the California statute, courts have found that the marketing and sale of goods that embody a trade secret would be actionable "use" in violation of the statute. *See, e.g., PMC, Inc. v. Kadisha,* 78 Cal. App. 4th 1368, 1383 (2000 (citing Rest. 3d Unfair Competition, § 40, com. c, p. 455); *Cognis Corp. v. CHEMCENTRAL Corp.*, 430 F. Supp. 2d 806, 812 (N.D. Ill. 2006); *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 717 (E.D. Va. 2012) (Virginia's Uniform Trade Secret Act violated, and injunction appropriate, when "some aspects of the misappropriation occurred in the United States" and defendant "will be selling its products (made by using the misappropriated trade secrets) in the United States").

Accordingly, the Court rejects Defendants' extraterritoriality argument.

### ii. Diversity and Forum Selection

First, Defendants make the odd argument that Meggitt Xiamen must have been the owner of the trade secrets in question because Defendant Nie worked for Meggitt Xiamen, not Meggitt SJC. However, Plaintiffs' complaint and declarations to the Court make it clear that Meggitt SJC is the owner of the trade secrets in question, *see* Compl. ¶¶ 18-24, 29-30; Mendoza Second Sepp. Decl. ¶¶ 2-4, and consequently Meggitt SJC has shown that both standing and diversity jurisdiction exist.

Second, Defendants argue that a forum selection clause in Defendant Nie's contract with Meggitt Xiamen mandates that this dispute be resolved in China. Supp. Opp'n at 4-5. The Court agrees with Plaintiff that, first, the clause does not apply to Defendant Niell-Tech in any way, since only Nie is a party to the contract. Second, Plaintiff is correct that the forum selection clause, by its very terms, only applies to Nie's representation that he would not "store any [confidential or proprietary information] in any electronic device and/or computers or data storage media," Bosworth Decl. (Dkt. 19) Ex. 2, not to all allegations of misappropriation of trade secrets. Finally, Plaintiff is correct that this agreement appears to be between Nie and Meggitt Xiamen, not Meggitt SJC, and so would not compel Meggitt SJC to pursue the matter in China.

### iii. Personal Jurisdiction

Defendant argues that this Court cannot exercise personal jurisdiction over the Defendants. There is a three-part test for establishing personal jurisdiction: (1) the non-resident

defendant has purposefully directed its activities at the forum; (2) the claim has arisen out of defendant's forum-related activities; and (3) the exercise of jurisdiction would be reasonable. *See Schwarzenegger v. Fred Martin Motor Co*., 374 F. 3d 797, 802 (9th Cir. 2004). Here, the first prong is satisfied, first because Nie obtained or learned about the trade secrets through videoconferences and emails with Meggitt SJC in California and by visiting Meggitt SJC in 2010; second because Defendants committed intentional acts of misappropriation expressly aimed at Meggitt SJC in California causing harm that they knew would be suffered in California; and third because they have traveled to California trade shows to sell (i.e. "use") the goods that embody the misappropriated trade secrets.

The second prong is satisfied because there is no question that Plaintiff's claim has arisen out of Defendants' activities in California, both during Nie's contact with Meggitt SJC and during the trade shows.

The third prong is satisfied because Defendants have failed to present any compelling reason that jurisdiction would not be reasonable. Defendants' misappropriation was purposefully interjected into the affairs of a California company, affecting the protection of trade secrets in the state and allegedly in violation of California law. Defendant has retained local counsel and appeared in the case, and this forum is clearly important to Plaintiff's interest in a fair and efficient adjudication of its claims. The Court is also not persuaded by Mr. Nie's service of process argument, as he has already attempted to file an answer (pro se) with this Court and has appeared several times without raising the service issue.

### iv. Preemption

Finally, Defendants make an unpersuasive argument that, pursuant to *TianRui Grp. Co. Ltd. v. Int'l Trade Comm'n*, 661 F. 3d 1322, 1327 (Fed. Cir. 2011), the Tariff Act of 1930, 19 U.S.C. § 1337, preempts the California trade secrets statute. First, this argument is based on an incorrect characterization of the alleged misappropriation as occurring completely in China. Second, Defendants misstate the court's decision in *TianRui*. In that case, the court had to determine if an administrative law judge adjudicating a case before the International Trade Commission should have applied Illinois trade secret law to determine "what constitutes misappropriation of trade secrets sufficient to establish an 'unfair method of competition' under section 337." *Id.* at 1327. It determined that, because the question under section 337 was "whether goods imported from abroad should be excluded because of a violation of the congressional policy of protecting domestic industries from unfair competition, which is a distinctly federal concern," Illinois trade secret law did not apply. *Id.* That is not the case here, where Plaintiff has brought a California Uniform Trade Secrets Act claim before a district court in California.[1]

### b. The Facts Support Plaintiff's Motion for Preliminary Injunction

---

[1] Because Plaintiff's motion for preliminary injunction is fully supported by Plaintiff's California Uniform Trade Secrets Act claim, the Court need not consider Defendants' argument that the California statute preempts Plaintiff's remaining causes of action.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff has the burden to establish: (1) a likelihood of success on the merits; (2) a likelihood to suffer irreparable harm if the preliminary relief is not granted; (3) a balance of the equities favors the plaintiff; and (4) that the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Here, Plaintiff's uncontroverted version of the facts supports its motion for a preliminary injunction. Plaintiff's voluminous exhibits and declarations establish that Nie and Niell-Tech misappropriated Plaintiff's proprietary software, job travelers, technical photographs, engineering drawings, and other materials in order to manufacture and sell goods that embodied the secrets. Plaintiff has likewise established a likelihood of irreparable harm that would flow from Defendants' continued use, dissemination, and control over Plaintiff's trade secrets. A balance of the equities favors injunctive relief, as the proposed injunction would only prevent the continued unlawful use by Defendants of Plaintiff's secrets. Some expedited discovery and the availability of further hearings in this Court to determine the continued appropriateness and scope of the injunction provide Defendants with the opportunity to quickly address any hardships they may face going forward. Finally, the public interest is served by an injunction that discourages behavior that threatens competition.

### III.  Disposition

For these reasons, the Court hereby GRANTS Plaintiff's motion. Plaintiff's proposed injunction will issue as requested, with the exception of certain requests related to expedited discovery. That order will be docketed immediately following this Minute Order.

A status conference on this matter is set for November 18, 2013, at 8:30am, and a Scheduling Conference will be set for the same time.

The Clerk shall serve this minute order on all parties.

Clerk's Initials: jcb