Jaime Marquart (Bar No. 200344)
  jmarquart@bakermarquart.com
Christian A. Anstett (Bar No. 240179)
  canstett@bakermarquart.com
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

Ruixue Ran (admitted *pro hac* vice)
  ranrx@junhe.com
Mark H. Chu *(*admitted *pro hac vice)*
  zhuxw@junhe.com
JUN HE LAW OFFICES
China Resources Building, 20th Floor
8 Jianguomenbei Avenue
Beijing 100005 P.R. China
Telephone:  (86) 10 8519 1300
Facsimile: (86) 10 8519 1350

Attorneys for Defendants,
NIE YONGZHONG and XIAMEN NIELL ELECTRONICS CO. LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGGITT (SAN JUAN CAPISTRANO), INC., a Delaware corporation dba MEGGITT SENSING SYSTEMS,<br><br>            Plaintiff,<br><br>            v.<br><br>NIE YONGZHONG, aka William Nie and/or Bill Nie, an individual; and XIAMEN NIELL ELECTRONICS CO. LTD., a Chinese corporation,<br><br>            Defendants. | Case No. SACV13-00239 DOC (DFMx)<br><br>**DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER**<br><br>**[Discovery Document: Referred to Magistrate Judge Douglas F. McCormick]**<br><br>Date: February 11, 2014<br>Time: 10:00 am<br>Judge: Hon. Douglas F. McCormick<br>Location: Courtroom 6A- 6th Floor |

# I.    INTRODUCTION

Counsel for Defendants has had numerous communications with counsel for Plaintiff regarding the crafting of a joint protective order.  As early as December 5, 2013, counsel for Plaintiff had been aware that co-counsel in China, Ms. Ruixue Ran and Mr. Mark H. Chu of Jun He Law Offices ("Jun He"), had been admitted to practice in the United States and were familiar with protective orders.[1]  In addition, as early as December 31, 2013, counsel for Plaintiff had been provided copies of two orders rendered by the International Trade Commission denying Complainant's motion to preclude Ms. Ruixue Ran and her law firm from access to confidential business information under the protective order.[2]  Despite receiving the above information, Plaintiff's counsel steadfastly refused to allow Jun He access to Plaintiff's confidential information on an attorneys' eyes only basis.[3]

---

[1] Declaration of Mark H. Chu filed concurrently herewith ("Chu Decl."), Ex. A (Gray email to Kertell dated December 5, 2013 regarding access to Plaintiff's confidential information by Jun He).

[2] *See* Chu Decl., Ex. E, *In the Matter of Certain Rubber Resins and Processes for Manufacturing Same*, Inv. No. 337-TA-849, Order No. 13 (Nov. 6, 2012) ("SI Group has only made hypothetical accusations that Ms. Ran has violated the Protective Order and has not shown a single instance where Ms. Ran acted improperly . . . [t]these groundless allegations are insufficient cause to disqualify counsel"); *See also* Chu Decl., Ex. F, *In the Matter of Certain L-Lysine Feed Products, Their Methods of Production and Genetic Constructs for Production*, Inv. No. 337-TA-571, Order No. 4, at *4 – 5 (July 7, 2006) (denying Complainant's motion to preclude Ms. Ran and her firm from accessing confidential information under the protective under on the basis that, "as a member of the New York bar, she would be subject to disciplinary and ethical sanctions in the event of a violation of the Protective Order."

[3] For example, in its responses to Neill-Tech's first set of interrogatories dated January 15, 2014, Plaintiff responds in the general objections that "Plaintiff objects to each and every one of Defendants' interrogatories to the extent they seek trade secret, confidential, and/or otherwise proprietary information of Plaintiff and/or its directors, officers, or employees. Such information will only be produced in a manner consistent with a Protective Order entered in the above-captioned action (that, *among other things, prevents conversion of its trade secret information into*

DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER

On January 15, 2014, counsel for Defendants' held a telephonic meet and confer with Plaintiff's counsel regarding the issues relating to the joint protective order.  At that meet and confer, counsel for Plaintiff and Defendants agreed that there were five outstanding issues based on the version of the protective order exchanged between the parties at that time.[4]  On January 17, 2014, Counsel for Defendants emailed counsel for Plaintiff stating that, as a compromise, they would accede to four out of the five issues, so long as Plaintiff's agreed that their confidential information could be transmitted to China.[5]  On January 24, 2014, after receiving Plaintiff's proposed version of the joint protective order, counsel for Defendants emailed Plaintiff's counsel stating that in addition to acceding to four out of the original five issues, they also would agree that Plaintiff's source code could only be viewed in the United States, so long as Defendant's source code could only be viewed in China.

Despite Defendants' counsel acceding to almost all of the issues raised by Plaintiff during their January 15, 2014 meet and confer, Plaintiff's counsel has refused to allow Jun He to view Plaintiff's confidential information on an attorneys'

_electronic form, dissemination of its trade secret information outside the United States, or disclosure of its trade secret information to anyone other than the current attorneys of record in this action who are permanently located in the United States_), or by other agreement of the parties through their counsel of record". _See_ Plaintiff Meggitt (San Juan Capistrano), Inc's Objections and Responses to Defendants' First Set of Interrogatories, Chu Decl., Ex. C (emphasis added).

[4] Chu Decl., Ex. B (Chu email to LaPorte dated January 17, 2014). The issues in dispute were as follows: (1) Paragraph 4 (Challenging Confidentiality Designations) and Paragraph 8 (Objections); (2) Paragraph 5 (Access) and Paragraph 9 (Source Code); (3) Paragraph 11 (Final Disposition); (4) Paragraph 12 (Designated Material Subpoenaed or Ordered Produced in Other Litigation) and Paragraph 13 (A Non-Party's Protected Material Sought to be Produced in this Litigation); (5) Access to Confidential Information by Interpreters / Translators.

[5] Chu Decl., Ex. B (Chu email to LaPorte dated January 24, 2014 regarding access to Plaintiff's confidential information by Jun He).

DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER

eyes only basis.  However, Plaintiff's counsel must surely be aware that the job travelers in dispute have already, by virtue of being shared with Plaintiff's Xiamen entity, left the continental United States.  As of the date of this brief, Plaintiff's counsel has been unable to articulate the risk of allowing Jun He to view Plaintiff's confidential information on an attorneys' eyes only basis.

## II.    ACCESS TO TRADE SECRET INFORMATION

### A.    Plaintiff's Position

Plaintiff has changed its stance on who can have access to its confidential information, with each successive stance more restrictive than the last. First, upon becoming aware that Jun He had been engaged as co-counsel in China, Plaintiff's counsel initially objected on the basis that "Plaintiff cannot agree to grant counsel who are not admitted to a United States court access to its Confidential Information."[6]  Upon discovering that co-counsel was admitted to practice in the United States, Defendant changed their position and stated that "[w]e cannot agree that confidential information leave the U.S. in that we would lose jurisdiction and control over the situation / information if there were disclosure of any kind, inadvertent or otherwise."[7]  Plaintiff changed its position yet again in their objections to discovery responses by adding the requirement that only "current attorneys of record in this action who are permanently located in the United States" will have access to Plaintiff's confidential information.

Recently, Plaintiff has adopted an even harder line, as evidenced in its objection to Defendants' interrogatory responses, by limiting access to "the current attorneys of record in this action who are permanently located in the United States."[8]

---

[6] Chu Decl., Ex. A (Gray email to Kertell dated December 5, 2013 regarding access to Plaintiff's confidential information by Jun He).

[7] Chu Decl., Ex. A (LaPorte email to Gray dated December 5, 2013 regarding access to Plaintiff's confidential information by Jun He).

[8] *Id.*

Similarly, in their proposed protective order, Plaintiff would limit the viewing of the trade secrets to "outside litigation counsel of record in this litigation located in Orange County, California."[9]  In their Opposition to Defendants' Motion for a Protective Order Staying Discovery, Plaintiff would provide for a "restriction that such [confidential] documents only be disclosed to counsel of record located permanently in the United States and admitted to the California Bar."[10]  Such a restriction, if accepted, would effectively prevent any counsel located in China from having attorneys' eyes only access to Plaintiff's confidential information.

The above restrictions would also act to prevent U.S. qualified attorneys at international firms (such as Jones Day and Baker & McKenzie) working outside of the United States from accessing confidential information in trade secret actions. Applied to the instant case, such a restriction would prevent Jun He (and any other law firm, foreign or domestic, with counsel located outside the United States) from effectively representing the Defendants in this action.[11]

According to Plaintiff's proposed draft protective order, the confidential information or items are to be classified into three levels, i.e., "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE MATERIAL". As to the information or items designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE MATERIAL", unless permitted by the producing party, the receiving party may not create any electronic images or electronic copies[12] , and they are not allowed to

---

[9] *See* Plaintiff's Proposed Protective Order, a ComparRite version of which (indicating Plaintiff's changes to Defendants' Proposed Protective Order) is attached to this motion as Exhibit 2.

[10] Plaintiff's Opposition to Defendants' Motion for a Protective Order Staying Discovery (Dkt. 85), fn. 9.

[11] See fn 3, *supra*.

[12] *See* 7.4(a) and 7.6(k) of Plaintiff's Proposed Protective Order, Ex. 2.

DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER

physically leave the continental United States.[13]  Presumably, Plaintiff's position is based on the theory that the District Court has no realistic ability to sanction Defendants' counsel in China for any breach of a Protective Order.[14]  However, as shown below, such a position has no basis in law or fact.

**B.    Defendants' Position**

Defendants, in their proposed joint protective order, propose that Jun He will have attorneys' eyes only access to Plaintiff's confidential information (i.e., such information can be transmitted to China). As a compromise, Defendants have agreed that Plaintiff's source code can only be viewed in the United States so long as Defendants' source code can only be viewed in China.

**C.    Argument in Support of Defendants' Position**

1.    This Court Has the Ability to Sanction U.S. Qualified Attorneys Located in China For any Breach of a Protective Order

Plaintiff's argument that District Court has no realistic ability to sanction Defendants' U.S. qualified attorneys located in China for any breach of a Protective Order is unconvincing. Ms. Ran and Mr. Chu are members in good standing of the New York and Illinois bar.[15]  In addition, pursuant to Local Rule 83-2.1.1.2, "[a]ny attorney who appears for any purpose submits to the discipline of this Court in all respects pertaining to the conduct of the litigation."  As such, Ms. Ran and Mr. Chu are clearly within the jurisdictional reach of this Court and would be subject to disciplinary and ethical sanctions in the event of a violation of the protective order, whether intentional or inadvertent.

It is common for U.S. qualified attorneys who are based abroad to have access

---

[13] *See* 7.4(c) and 7.6(m) of Plaintiff's Proposed Protective Order, Ex. 2.
[14] *See* Plaintiff's Opposition to Defendants' Motion for a Protective Order Staying Discovery (Dkt. 85), p. 16.
[15] *See Application for attorney Ruixue Ran to Appear Pro Hac Vice* (Dkt. 63); *See Application for attorney Mark H. Chu to Appear Pro Hac Vice* (Dkt. 64).

to confidential trade secret information. For example, in RF Micro Devices, Inc. v. Xiang, 2013 U.S. Dist. LEXIS 140086, Benjamin Bai, a U.S. qualified attorney based at Allen & Overy LLP's Shanghai Office[16] was allowed access to plaintiff's trade secret information.  Specifically, the stipulated protective order entered by the court in RF Micro Devices did not forbid the cross-border transmission of the trade secret information.[17]  Also, it would be incongruous to deny an attorney qualified to practice in the U.S. but located abroad the same privileges afforded to foreign attorneys.  For example, in Briese USA, Inc. v. Briese Lichttechnik Vertriebs GmbH, 2008 U.S. Dist. LEXIS 27543, the foreign defendants' counsel in Germany were allowed access to plaintiff's confidential information, even though German counsel may not have been admitted to practice law in the United States.

Further, Ms. Ran has signed several protective orders regarding confidential business information in U.S. International Trade Commission cases ("ITC"), three of which are trade secret cases involving the cross-border electronic transmission of the U.S. complainants' trade secret materials into China.[18]  As part of her representation of Respondents before the ITC, Ms. Ran has also appeared before the Court of Appeals for the Federal Circuit.[19]  In addition, complainants in ITC cases have previously raised the same argument as Plaintiff does in the instant action, i.e., that Ms. Ran and her firm cannot be properly sanctioned in the event of any breach

---

[16] *See* Mr. Bai's profile *available at* www.allenovery.com/people/en-gb/Pages/Benjamin-Bai.aspx (last accessed on January 27, 2014).

[17] *RF Micro Devices, Inc. v. Xiang*, 2013 U.S. Dist. LEXIS 140086, Dkt. 68-1.

[18] Attached as Exhibit D to the Chu Decl. are true and correct copies of letters to the International Trade Commission ("ITC") where Ms. Ran appeared in the cases and agreed to be bound by the terms of the protective orders in those cases. Mr. Chu is also referenced in one of these letters as signing the protective order in a trade secret case.

[19] *Tianrui Group Co. Ltd. v. ITC,* No. 2010-139*)* (Oct. 11, 2011)*; Tessera Inc. v. Int'l Trade Comm'n,* No. 2010–1176 (May 23, 2011); *Ajinomoto Co., Inc. v. Int'l Trade Comm'n,* No. 2009-1081 (March 8, 2010).

DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER

of a protective order.[20]  Like the complainants in these two cases, Plaintiff has not provided any evidence that Ms. Ran or Mr. Chu has violated any past protective orders nor any legal grounds which would call from their being precluded from having access to Plaintiff's confidential information on an attorneys' eyes only basis.

Therefore, based on the foregoing, the U.S. admitted attorneys at Jun He should be allowed to have access to all of the confidential information.

2.     Adoption of Plaintiff's Restrictions Would Unduly Burden and Unfairly Prejudice the Defendants

If Plaintiff's proposed restrictions are accepted by this Court, Jun He's U.S. admitted attorneys would be forced to personally travel to the United States to review discovery documents and to permanently stay in the United States during the pendency of this case in order to effectively prepare a defense. Such a restriction would entail a colossal waste of resources and would impose an undue burden upon the Defendants.  The alternative would require that the Defendants rely solely on counsel located in the United States which will result in ineffective communication (a point complained of by Plaintiff's counsel) between the Chinese Defendants and their U.S. counsel.[21]  Moreover, such ineffective communication will threaten to hamper discovery, as well as other aspects, of this case.  Since joining the case as co-counsel, Jun He has played an active and effective role in improving the discovery process.  For example, during the mandated meet and confer on January 14, 2014 held before this Court and personally attended by Mr. Chu on behalf of Defendants, the parties were able to reach an agreement on a framework for the scope of future discovery.

---

[20] *See* fn 2, *supra*.

[21] Plaintiff's Opposition to Defendants' Motion for a Protective Order Staying Discovery (Dkt. 85), p. 3 – 5.

Also, Defendants will be unfairly prejudiced by limitations on access to Plaintiff's trade secret information.  As many of the operative facts of this case occurred in China, it is crucial to have counsel based in China to facilitate the discovery.  In addition, Ms. Ran and Mr. Chu are bilingual attorneys in China with knowledge of federal civil action procedure, which will be invaluable to Defendants' formulation of strategy, responding to discovery requests, briefing, and the hearing itself.

3. <u>Plaintiff's Alleged Trade Secrets Have Already Been Transmitted to China by Virtue of Disclosure to Meggitt Xiamen</u>

Plaintiff objects to the creation of any electronic images or electronic copies of the material containing its trade secrets.  However, most (if not all) of these alleged materials should already exist in electronic form as they have been transmitted to Plaintiff Xiamen.  In the Operations Governance Framework Agreement between Plaintiff SJC and Meggitt Xiamen article 9.0 explicitly provides that "[t]he following documents must be released by each MSS [Meggitt Sensing Systems] site configuration controller and sent directly to MXM's [Meggitt Xiamen's] document control centre (DCC), in compliance with MSS external configuration control (inclusive of trade compliance) and in accordance with MSS SBU product integration – outsourcing/transfer stage gate guidelines. 1. Production Drawings 2. Bill of Material (BOM) 3. Process Specifications 4. Acceptance Test Procedures (ATP) 5. Manufacturing Build/Work Instructions 6. Data Sheets."[22] Since the assembly instructions, and other technical documents used in the manufacture of accelerometers and sensors such as the production drawings, bill of materials, process specifications, acceptance test procedures and data sheets have apparently already been electronically transmitted to its affiliate located in Xiamen,

---

[22] *See* Exhibit A to Mendoza Second Supplemental Declaration in Support of Plaintiff's Motion for Preliminary Injunction and Expedited Discovery (Dkt 39-9), p. 18.

China, Plaintiff has no legal basis to object to the electronic imaging and cross-border transmission of trade secret information largely comprised of assembly instructions.[23]

## III.   ACCESS TO SOURCE CODE

### A.   Plaintiff's Position

Plaintiff proposes that each party's source code is not allowed to physically leave the continental United States[24], and shall be made available for inspection in Orange County, California.[25]

### B.   Defendants' Position

Considering the importance and sensitivity of the parties' source code and the potential applicability of U.S. and Chinese export control laws, Defendants agree with Plaintiff's position that the source code will not leave the continental United States so long as Defendants' source code is afforded the same treatment (i.e., its source code will not be allowed to physically leave China and shall be made available for inspection in Beijing).  However, Plaintiff's proposal does not consider the necessity of transporting the source code to Hong Kong, a common location for the deposition of Chinese deponents.  Therefore, Defendants have added an exception allowing the transportation of each party's source codes to Hong Kong for the purposes of depositions.

---

[23] Plaintiff may argue that export control laws of the United States support its position prevents cross-border transmission of its alleged trade secrets. However, Plaintiff fails to raise this argument. Even if it raises such argument, its argument will be baseless as the alleged trade secrets have already been transmitted to Meggitt Xiamen, which means that either such materials are not subject to export control laws or, if they are subject to export control laws, that Plaintiff has violated these laws.

[24] See 7.4(c) and 7.6(m) of Plaintiff's Proposed Protective Order, Ex. 2.

[25] See 7.6 (a) of Plaintiff's Proposed Protective Order, Ex. 2.

DEFENDANTS' BRIEF ON FORM OF JOINT PROTECTIVE ORDER

**IV.   ACCESS TO CONFIDENTIAL INFORMATION BY IN-HOUSE COUNSEL AND OTHER DESIGNATED EMPLOYEES**

   **A.   Plaintiff's Position**

   Plaintiff proposes that two in-house counsels and two other designated employees of the receiving party shall be allowed access the information or item designated as "CONFIDENTIAL" .[26]

   **B.   Defendants' Position**

   Defendants propose that in-house counsel and designated employees' access to the information designated as "CONFIDENTIAL" is unnecessary based on the following reasons.  First, the parties can adequately prepare the case without in-house counsel and designated employees' access to the opposing party's confidential information.  Specifically, this is a trade secret misappropriation case and its nucleus entails the comparison of both parties' technical information, for which access by in-house counsel and other designated employees would be unnecessary.  Second, in view of the fact that the parties are competitors, the intentional or inadvertent disclosure of the confidential information by in-house counsel and/or the designated employees will potentially cause irreparable harm to the producing party.

**V.   ACCESS TO CONFIDENTIAL INFORMATION BY RULE 30(B)(6) WITNESSES**

   **A.   Plaintiff's Position**

   Plaintiff proposes that Rule 30(b)(6) witnesses of the Producing Party be allowed to access the opposing party's information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE

---

[26] See 2.8 and 7.2(c) of Plaintiff's Proposed Protective Order, Ex. 2.

1  MATERIAL".[27]

2  **B.  Defendants' Position**

3  Although no objection is raised as to the 30(b)(6) witness' access to the

4  information designated as "CONFIDENTIAL," Defendants object to Plaintiff's

5  proposal that 30(b)(6) witness shall have access to the information designated as

6  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

7  ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE

8  MATERIAL" on the basis that the confidential information of both parties may be

9  subject to the risk of intentional or inadvertent disclosure by the 30(b)(6) witness.

10  For the above reasons, Defendants respectfully request that this Court enter

11  Defendants' proposed protective order, attached to this brief as Exhibit 1.

12
13  DATED: January 28, 2014          JUN HE LAW OFFICES

14
15                                   By: /s/ Mark H. Chu
                                     Ruixue Ran
16                                   Mark H. Chu

17                                   Attorney for Defendants

18  DATED: January 28, 2014          BAKER MARQUART LLP

19
20                                   By: /s/ Jaime W. Marquart
21                                   Jaime W. Marquart

22                                   Attorney for Defendants

23

24

25

26

27  _____
    [27] See 7.2(h), 7.3 (g) and 7.5 (g) of Plaintiff's Proposed Protective Order, Ex. 2.
28

- 11 -

# Exhibit 1

1  Lawrence R. LaPorte (SBN 130,003)
2  laportel@dicksteinshapiro.com
   DICKSTEIN SHAPIRO LLP
3  2049 Century Park East, Suite 700
   Los Angeles, CA 90067-3109
4  Telephone:  (310) 772-8300
5  Facsimile: (310) 772-8301

6  Attorneys for Plaintiff
7  MEGGITT (SAN JUAN CAPISTRANO),
   INC.
8

9  Joseph A. Mandour, III (SBN 188,896)          Ruixue Ran (admitted *pro hac* vice)
   jmandour@mandourlaw.com                        ranrx@junhe.com
10 Gordon E. Gray (SBN 175,209)                   Mark H. Chu (admitted *pro hac* vice)
   ggray@mandourlaw.com                           zhuxw@junhe.com
11 Ben T. Lila (SBN 246,808)                      JUN HE LAW OFFICES
12 blila@mandourlaw.com                           China Resources Building, 20th Floor
   MANDOUR & ASSOCIATES, APC                      8 Jianguomenbei Avenue
13 168 West Bernardo Drive, Suite 400             Beijing 100005 P.R. China
14 San Diego, CA 92127                            Telephone:  (86) 10 8519 1300
   Telephone:  (858) 487-9300                     Facsimile: (86) 10 8519 1350
15 Facsimile: (858) 487-9390
16
17 Attorneys for Defendants
   NIE YONGZHONG and XIAMEN NIELL
18 ELECTRONICS CO., LTD.

19          **UNITED STATES DISTRICT COURT**
20
           **CENTRAL DISTRICT OF CALIFORNIA**
21

22 MEGGITT (SAN JUAN                  Case No. SACV 13-0239 DOC (DFMx)
   CAPISTRANO), INC.
23                                    **[PROPOSED] JOINT PROTECTIVE**
                 Plaintiff,           **ORDER**
24
        v.                            Hon. David F. McCormick
25
26 NIE YONGZHONG and XIAMEN
   NIELL ELECTRONICS CO., LTD.,
27          Defendants.
28

1. **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of trade secret, confidential, otherwise proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, because good cause exists, the Parties hereby petition the Court to enter the following Joint Protective Order ("Order"). The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles. The Parties further acknowledge, as set forth in Paragraph 12.4, below, that this Order does not entitle them to file confidential information under seal. Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

2. **DEFINITIONS**

2.1  <u>Challenging Party</u>:  A Party or Non-Party that challenges the designation of information or items under this Order.

2.2  <u>"CONFIDENTIAL" Information or Items</u>:  Information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3  <u>Designating Party</u>:  A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.4  <u>Disclosure or Discovery Material</u>:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are offered for

inspection, produced, or generated in disclosures or responses to discovery in this matter.

2.5   Expert:  A person with specialized knowledge or experience in a matter pertinent to the litigation who: (1) has been retained by a Party or its Outside Counsel of Record to serve as an expert witness or as a consultant in this action; (2) is not a current employee of a Party; (3) is not a current employee of a Party's competitor; and (4) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.6   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  Extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.7   "HIGHLY CONFIDENTIAL – SOURCE CODE " Information or Items: Extremely sensitive "Confidential Information or Items" representing computer source code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9   Non-Party:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10   Outside Counsel of Record:  Attorneys who are not employees of a Party to this action, but are retained to represent or advise a Party to this action and have formally appeared in this action on behalf of that Party.

2.11   Party:  Any Party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their paralegals, patent agents, and secretarial staff).

2.12   Producing Party:  A Party or Non-Party that offers for inspection or

produces Disclosure or Discovery Material in this action.

2.13   <u>Professional Vendors</u>:  Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium).

2.14   <u>Protected Material</u>:  Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL " "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.15   <u>Receiving Party</u>:  A Party that inspects or receives Disclosure or Discovery Material from a Producing Party.

3.   <u>SCOPE</u>

The protections conferred by this Order cover not only Protected Material (as defined above), but also: (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Outside Counsel of Record that might reveal Protected Material.  However, the protections conferred by this Order do not cover any information that is in the public domain at the time of the disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of the law or this Order.

4.   <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of: (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

    5.1   <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

    Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other Parties) expose the Designating Party to sanctions.

    If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

    5.2   <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (*See, e.g.*, the second paragraph of Section 5.2(a), below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.  Designation in conformity with this Order requires:

    (a)   <u>for information in documentary form</u> (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other  discovery matters), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE " to each page that contains protected material.

    A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the

inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" with the exception of source code, where such material shall be deemed "HIGHLY CONFIDENTIAL – SOURCE CODE" throughout the inspection.  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material.

(b)     for testimony given in deposition or in other discovery matters, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted.  When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to seven (7) days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted.

The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by

the Designating Party.  The Designating Party shall inform the court reporter of these requirements.  Any transcript that is prepared before the expiration of a seven (7) day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed, with the exception that any deposition in which a document or thing designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" was used or which included "HIGHLY CONFIDENTIAL – SOURCE CODE" testimony will be designated "HIGHLY CONFIDENTIAL – SOURCE CODE" in its entirety unless otherwise agreed.  However, if a Non-Designating Party makes a request before the expiration of a seven (7) day period for designation, the Parties will work together to immediately identify testimony and exhibits that are not "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE "

After the expiration of that period, the transcript shall be treated only as actually designated.  Any portion of a deposition transcript that contains information from a document or thing designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be separately bound from the transcript.

(c)     for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

5.3     Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

1  6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

2       6.1     Timing of Challenges.  Any Party or Non-Party may challenge a

3  designation of confidentiality at any time.  Unless a prompt challenge to a

4  Designating Party's confidentiality designation is necessary to avoid foreseeable,

5  substantial unfairness, unnecessary economic burdens, or a significant disruption or

6  delay of the litigation, a Party does not waive its right to challenge a confidentiality

7  designation by electing not to mount a challenge promptly after the original

8  designation is disclosed.

9       6.2     Meet and Confer.  The Challenging Party shall initiate the dispute

10 resolution process by providing written notice of each designation it is challenging

11 and describing the basis for each challenge.  To avoid ambiguity as to whether a

12 challenge has been made, the written notice must recite that the challenge to

13 confidentiality is being made in accordance with this specific.  The Parties shall

14 attempt to resolve each challenge in good faith and must begin the process by

15 conferring directly in accordance with Civil Local Rule 37-1.  In conferring, the

16 Challenging Party must explain the basis for its belief that the confidentiality

17 designation was not proper and must give the Designating Party an opportunity (not

18 to exceed three (3) days after the Civil Local Rule 37-1 conference of counsel) to

19 review the designated material, to reconsider the circumstances, and, if no change

20 in designation is offered, to explain the basis for the chosen designation.

21      6.3     Judicial Intervention.  If the Parties cannot resolve a challenge without

22 court intervention, the Challenging Party shall file and serve a motion disputing the

23 confidentiality designation in accordance with Civil Local Rule 37-2.  In addition,

24 the Designating Party may file a motion to retain confidentiality at any time if there

25 is good cause for doing so.

26      The burden of persuasion in any such challenge proceeding shall be on the

27 Designating Party.  Frivolous challenges and those made for an improper purpose

28 (e.g., to harass or impose unnecessary expenses and burdens on other parties) may

1  expose the Challenging Party to sanctions.  All parties shall continue to afford the

2  material in question the level of protection to which it is entitled under the

3  Producing Party's designation until the court rules on the challenge.

4  7.  ACCESS TO AND USE OF PROTECTED MATERIAL

5  7.1  Basic Principles.  A Receiving Party may use Protected Material that is

6  disclosed or produced by another Party or by a Non-Party in connection with this

7  case only for prosecuting, defending, or attempting to settle this litigation.  Such

8  Protected Material may be disclosed only to the categories of persons and under the

9  conditions described in this Order.  When the litigation has been terminated, a

10  Receiving Party must comply with the provisions of Paragraph 13, below.

11  Protected Material must be stored and maintained by a Receiving Party at a

12  location and in a secure manner that ensures that access is limited to the persons

13  authorized under this Order.

14  7.2  Disclosure of "CONFIDENTIAL" Information or Items.  Unless

15  otherwise ordered by the court or permitted in writing by the Designating Party, a

16  Receiving Party may disclose any information or item designated

17  "CONFIDENTIAL" only to:

18  (a)  the Receiving Party's Outside Counsel of Record in this action;

19  (b)  paralegals, patent agents, and secretarial staff employed by the

20  Receiving Party's Outside Counsel of Record in this action, provided it is

21  reasonably necessary to disclose the information to such person for this litigation

22  and they have signed and returned the "Acknowledgment and Agreement to Be

23  Bound" (Exhibit A);

24  (d)  Experts (as defined in this Order) of the Receiving Party to whom

25  disclosure is reasonably necessary for this litigation and who have signed the

26  "Acknowledgment and Agreement to Be Bound" (Exhibit A);

27  (e)  the Court and its personnel;

28  (f)  court reporters and their staff and Professional Vendors to whom

1    disclosure is reasonably necessary for this litigation and who have signed the

2    "Acknowledgment and Agreement to Be Bound" (Exhibit A);

3         (g)    any mediator who is assigned by the Court to hear this matter, and his

4    or her staff;

5         (h)    the author or recipient of a document containing the information or a

6    custodian or other person who otherwise possessed or knew the information; and

7         (i)    any other person with the prior written consent of the Producing Party.

8         7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

9    ONLY" Information or Items.  Unless otherwise ordered by the Court or permitted

10   in writing by the Designating Party, information, documents, and things designated

11   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," shall be disclosed

12   solely to the following persons:

13        (a)    the Receiving Party's Outside Counsel of Record in this action;

14        (b)    paralegals, patent agents, and secretarial staff employed by the

15   Receiving Party's Outside Counsel of Record in this action, provided it is

16   reasonably necessary to disclose the information to such person for this litigation

17   and they have signed and returned the "Acknowledgment and Agreement to Be

18   Bound" (Exhibit A);

19        (c)    Experts of the Receiving Party: (1) to whom disclosure is reasonably

20   necessary for this litigation; (2) who have signed the "Acknowledgment and

21   Agreement to Be Bound" (Exhibit A); and (3) as to whom the procedures set forth

22   in Paragraph 7.7(a), below, have been followed;

23        (d)    the Court and its personnel;

24        (e)    court reporters and their staff and Professional Vendors to whom

25   disclosure is reasonably necessary for this litigation and who have signed the

26   "Acknowledgment and Agreement to Be Bound" (Exhibit A);

27        (f)    any mediator who is assigned by the Court to hear this matter, and his

28   or her staff;

(h)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i)     any other person with the prior written consent of the Producing Party.

7.5     Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, information, documents, and things designated "HIGHLY CONFIDENTIAL – SOURCE CODE," shall be subject to the provisions set forth in Paragraphs 7.5 and 7.6, and may be disclosed, subject to Paragraph 7.6, solely to the following persons:

(a)     the Receiving Party's Outside Counsel of Record in this action;

(b)     paralegals, patent agents, and secretarial staff employed by the Receiving Party's Outside Counsel of Record in this action, provided it is reasonably necessary to disclose the information to such person for this litigation and they have signed and returned the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party: (1) to whom disclosure is reasonably necessary for this litigation; (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (3) as to whom the procedures set forth in Paragraph 7.7(a), below, have been followed;

(d)     the Court and its personnel;

(e)     court reporters and their staff who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     any mediator who is assigned by the Court to hear this matter, and has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(h)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i)     any other person with the prior written consent of the Producing Party.

7.6     Procedures for Disclosure of "HIGHLY CONFIDENTIAL – SOURCE

CODE" Information or Items.  The following provisions apply to the production of information, documents, and things designated "HIGHLY CONFIDENTIAL – SOURCE CODE," unless otherwise agreed by the Producing Party:

    (a)    All source code of the Plaintiff shall be made available by the Plaintiff to the Defendants in a secure room located at an office of the Plaintiff's outside litigation counsel of record in this litigation located in California. In such instance, the Plaintiff will be the Producing Party and the Defendants will be the Receiving Party

    (a)(i) All source code of the Defendants shall be made available by the Defendants to the Plaintiff in a secure room located at an office of the Defendant's outside litigation counsel of record in this litigation located in Beijing, China. In such instance, the Defendants will be the Producing Party and the Plaintiff will be the Receiving Party.

    (b)    No more than a total of four (4) individuals timely identified by the Receiving Party shall have access to the secure room in which the Producing Party produces its source code at any one time.

    (c)    For source code, the inspection shall take place on a secured, stand-alone computer equipped with a reasonably current version of Microsoft Windows operating system or Unix system, and an appropriate software platform for viewing the source code.  The secured, stand-alone computer shall not be equipped with either Internet access or network access to other computers.  With the exception of a keyboard, mouse, and monitor, all access ports on the secured, non-network, stand-along computer shall be disabled to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any source code outside or away from the secure room and/or computer on which source code is provided for inspection (hereinafter "Source Code Computer").  If necessary, the Source Code Computer may be configured by the Producing Party to run another mutually agreed upon operating system.

(d)     The Producing Party shall install tools that are sufficient for viewing and searching the source code produced and on the platform produced.  The Receiving Party's Outside Counsel and/or experts may request on a timely basis that other commercially available software tools for viewing and searching the source code be installed on the Source Code Computer, provided, however, that such tools are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with a storage device containing such licensed software tool(s) or other appropriate mechanism for obtaining the tool at least two (2) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.  The Receiving Party or its Expert(s) shall not at any time use any compilers, interpreters, or simulators in connection with the Producing Party's source code. The Producing Party shall not install any keystroke or other monitoring software on the Source Code Computer.

(e)     The Producing Party shall make the source code available electronically and in text searchable form.

(f)     Unless the Parties otherwise agree, the secure room and the Source Code Computer shall be made available from 9 a.m. to 7 p.m. local time, Monday through Friday (excluding holidays), until the close of the evidentiary record in this litigation.

(g)     Prior to the first inspection of a Producing Party's source code, the requesting party shall provide the Producing Party two (2) business days' notice of its intent to access the Producing Party' s secure room and/or Source Code Computer.  This first inspection can take place over as many successive days as the Parties agree to, subject to modification during the inspection.  The requesting party shall provide two (2) business days' notice prior to any subsequent inspections of the same Producing Party's source code.  Subsequent inspections can take place over as

1    many successive days as the Parties agree to, subject to modification during the

2    inspection.

3          (h)    The Receiving Party may request copies of those portions of the

4    source code that are reasonably necessary to facilitate the preparation of court

5    filings, pleadings, expert reports, deposition, as well as for hearing and deposition

6    preparation/exhibits – but shall request copying of only such limited portions as are

7    relevant to the claims and defenses in this case and are reasonably necessary for

8    such purpose.  In particular, the Receiving Party shall not print source code in order

9    to review pages or blocks of source code elsewhere in the first instance (*i.e.*, as an

10   alternative to reviewing that source code in the secure room).  To that end, the

11   Receiving Party shall not request copies of more than three (3) consecutive pages of

12   any document.

13         (i)    If the Producing Party objects that the portions requested for copying

14   are excessive and/or are not being done for a permitted purpose, the Producing

15   Party shall make such objection known to the Receiving Party within five (5)

16   business days.  If, after meeting and conferring, the Producing Party and the

17   Receiving Party cannot resolve the objection, the Producing Party shall be entitled

18   to seek the Court's resolution of whether the request for copying of the source code

19   in question was in excess and/or for a non-permitted Purpose using the same

20   procedure as set forth in Paragraph 6 (whereby the Producing Party is the

21   "Challenging Party" and the Receiving Party is the "Designating Party").  The

22   burden shall be on the Receiving Party to demonstrate that the number of pages

23   requested for copying is reasonable and not for an improper purpose.

24         (j)    The source code sought to be copied shall be labeled with "HIGHLY

25   CONFIDENTIAL – SOURCE CODE."

26   The Producing Party will keep the originals of the copied documents, and copies

27   shall be made for Outside Counsel within seven (7) days –unless an objection under

28

1 Paragraph 7.6(i), above, is timely made.  If a timely objection is made, the

2 Producing Party will retain the originals and all requested copies until the objection

3 is decided by the Court.

4   (k) Absent express written permission from the Producing Party, the

5 Receiving Party may not create any electronic images, or any other images, or

6 make electronic copies of any information, document, or thing designated

7 "HIGHLY CONFIDENTIAL – SOURCE CODE"  except as necessary to file,

8 lodge, or otherwise submit documents with the Court (and any such electronic

9 image/copy shall be immediately destroyed by the Receiving Party after the

10 completion of any such filing, lodging, or submission);

11   (l) The Receiving Party may not create more than two (2) additional

12 physical copies of any information, document, or thing designated "HIGHLY

13 CONFIDENTIAL – SOURCE CODE;"

14   (m) When not in use, for the situation under 7.6(a), the Receiving Party's

15 copies of any information, document, or thing designated "HIGHLY

16 CONFIDENTIAL – SOURCE CODE" must be kept in a secured, locked area at

17 Outside Counsel of Record's offices in the continental United States.  When not in

18 use, for the situation under 7.6(a)(i), the Receiving Party's copies of any

19 information, document, or thing designated "HIGHLY CONFIDENTIAL –

20 SOURCE CODE" must be kept in a secured, locked area at Outside Counsel of

21 Record's offices in the People's Republic of China. The Receiving Party may also

22 temporarily keep the copies at: (i) the Court for any proceedings(s) relating to the

23 "HIGHLY CONFIDENTIAL – SOURCE CODE," but only for the dates associated

24 with the proceeding(s); (ii) the sites where any deposition(s) relating to the

25 "HIGHLY CONFIDENTIAL – SOURCE CODE" are taken, and then only for the

26 dates associated with the deposition(s); and (iii) any intermediate location

27 reasonably necessary to transport the copies for a hearing or deposition in this

28 litigation (*e.g.*, a hotel prior to a deposition).  The Receiving Party shall exercise

due care in maintaining the security of the copies at these temporary locations. Except for the purpose of taking depositions in Hong Kong and subject to the laws and regulations of the United States relating to the export of technical data contained in such Protected Material, <u>under no circumstances shall any information, document, or thing designated "HIGHLY CONFIDENTIAL –SOURCE CODE " obtained by the Receiving Party under 7.6(a) ever physically leave the continental United States</u>. Except for the purpose of taking depositions in Hong Kong and subject to the laws and regulations of the People's Republic of China relating to the export of technical data contained in such Protected Material, <u>under no circumstances shall any information, document, or thing designated "HIGHLY CONFIDENTIAL –SOURCE CODE " obtained by the Receiving Party under 7.6(a)(i) ever physically leave the People's Republic of China.</u>

(n)    The provisions of this Paragraph 7.6 apply equally to any information, document, or thing created or derived from information, documents, or things designated "HIGHLY CONFIDENTIAL – SOURCE CODE."

(o)    The Receiving Party shall be entitled to take notes relating to the source code (subject to all of the restrictions contained herein), but may not block copy the source code into the notes.  No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein.  The Producing Party may visually, but not otherwise, monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that no information concerning the source code is being created or transmitted in any way.  The Producing Party may not observe or inspect the Receiving Party's notes or monitor the portions of source code reviewed by the Receiving Party's representative.

(p)    Other than as provided in this Order, the Receiving Party will not copy, remove, or otherwise transfer any source code from the secure room, including, without limitation, copying, removing, or transferring the source code

onto any recordable media or recordable device, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind.  The Receiving Party will not transmit any source code in any way from the Producing Party's secured facilities or the offices of the Producing Party's Outside Counsel;

(q)     The Producing Party shall provide representatives of the Receiving Party performing the inspection of the source code with access to another secure location in the same building as the secure room to store personal belongings.  The Producing Party shall not be permitted to observe or record the activities of the Receiving Party's representative(s) while in the secure location, and shall permit the representative(s) to access the secure location on an "as needed" basis.  Unless otherwise agreed in advance by the Parties in writing, at the end each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or Expert(s) shall remove all notes, documents, and all other materials from the secure room.

7.7     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Paragraph 7.3(c) or 7.5(c) must first make a written request to the Designating Party that: (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert; (2) sets forth the full name of the Expert and the city and state of his or her primary residence; (3) attaches a copy of the Expert's

1  current resume or *curriculum vitae*; (4) identifies the Expert's current employer(s);

2  and (5) identifies each person or entity from whom the Expert has received

3  compensation or funding for work in his or her areas of expertise or to whom the

4  expert has provided professional services, including in connection with a litigation, at

5  any time during the preceding five (5) years.

6        (b)    A Party that makes a request and provides the information specified in

7  the preceding respective paragraphs may disclose the subject Protected Material to

8  the Expert unless, within seven (7) days of delivering the request, the Party receives

9  a written objection from the Designating Party. Any such objection must set forth

10  in detail the grounds on which it is based.

11        (c)    A Party that receives a timely written objection must meet and confer

12  with the Designating Party to try to resolve the matter by agreement within three (3)

13  business days of the written objection. No further conference of counsel will be

14  required under Civil Local Rule 37-1. If no agreement is reached, the Party seeking

15  to make the disclosure to the Expert may file a motion as provided in Civil Local

16  Rule 37-2 seeking permission from the court to do so. Any such motion must

17  describe the circumstances with specificity, set forth in detail the reasons why

18  disclosure to the Expert is reasonably necessary, assess the risk of harm that the

19  disclosure would entail, and suggest any additional means that could be used to

20  reduce that risk.

21        In any such proceeding, the Party opposing disclosure to the Expert shall

22  bear the burden of proving that the risk of harm that the disclosure would entail

23  (under the safeguards proposed) outweighs the Receiving Party's need to disclose the

24  Protected Material to its Expert.

25        7.8    <u>Restrictions on the use of Protected Material</u>. The restrictions on the

26  use of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

27  ONLY," and "HIGHLY CONFIDENTIAL – SOURCE CODE" Disclosure or

28  Discovery Material established by this Order are applicable only to Disclosure or

1  Discovery Material received by a Party from another Party or from a Non-Party as a

2  direct result of this litigation.  A Party is free to do whatever it desires with its own

3  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

4  ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" Disclosure or

5  Discovery Materials in its sole and complete discretion.

6  8.  <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED</u>

7  <u>IN OTHER LITIGATION</u>

8  If a Party is served with a subpoena or a court order issued in other litigation

9  that compels disclosure of any information or items designated in this action as

10  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

11  ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," that Party must:

12  (a)  promptly notify in writing the Designating Party.  Such notification

13  shall include a copy of the subpoena or court order;

14  (b)  promptly notify in writing the party who caused the subpoena or order

15  to issue in the other litigation that some or all of the material covered by the

16  subpoena or order is subject to this Order.  Such notification shall include a copy of

17  this Order; and

18  (c)  cooperate with respect to all reasonable procedures sought to be

19  pursued by the Designating Party whose Protected Material may be affected.

20  If the Designating Party timely seeks a protective order, the Party served with

21  the subpoena or court order shall not produce any information designated in this

22  action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'

23  EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a

24  determination by the court from which the subpoena or order issued, unless the

25  Party has obtained the Designating Party's permission.  The Designating Party shall

26  bear the burden and expense of seeking protection in that court of its confidential

27  material.

28  9.  <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE</u>

PRODUCED IN THIS LITIGATION

    (a)    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

    (b)    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

    1.    promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

    2.    promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

    3.    make the information requested available for inspection by the Non-Party.

    (c)    If the Non-Party fails to object or seek a protective order from this Court within ten (10) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed

Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately: (1) notify in writing the Designating Party of the unauthorized disclosures; (2) use its best efforts to retrieve all unauthorized copies of the Protected Material; (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (4) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

Pursuant to Rule 502 of the Federal Rules of Evidence, the inadvertent production of documents subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection from disclosure will not waive the privilege or protection from disclosure. In addition, the Parties agree that if a document subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure is included in documents made available for inspection, such disclosure shall not be considered a waiver of the privilege or protection from disclosure.

The Producing Party must notify the receiving Party within seven (7) business days of becoming aware of the inadvertent disclosure of privileged or protected information. Upon a request from a Party that has inadvertently produced any document that it believes is subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection from disclosure, each Party receiving said document shall return it and all physical copies to the Producing Party and destroy all electronic copies within ten (10) business days. Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addressee(s), and topic of the document and such other information as is reasonably necessary to identify the document and describe its nature to the Court in any motion to compel production

of the document.  Such a record of the identity and nature of a document may not be made or used for any purpose other than preparation of a motion to compel in this Action.  Any other information in the document may not be used for any purpose in this Action.  After the return of the document(s), the Receiving Party may challenge the Producing Party's claim(s) of privilege, protection, or work-product by making a motion to the Court.

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the Parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the Parties may incorporate their agreement in the protective order submitted to the court.

12.   MISCELLANEOUS

12.2   Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2   Right to Assert Other Objections.  By stipulating to the entry of this Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

12.3   Export Control.  Disclosure of Protected Material shall be subject to all applicable United States and the People's Republic of China laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in each

country or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

12.4   <u>Filing Protected Material</u>.  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law.

13.   <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in Paragraph 4, each Receiving Party must return all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  The Receiving Party must also submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that: (1) identifies (by category, where appropriate) all the Protected Material that was returned; and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

14.   <u>RETROACTIVE EFFECT</u>

This Order shall apply retroactively to the date the instant Action was filed.  All materials produced during the course of the Action prior to the execution of this

Order that were designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall be subject to the terms and conditions of this Order.

IT IS SO ORDERED.


Dated:  February _____, 2014       By: _____

                                           Hon. David F. McCormick
                                           United States Magistrate Judge

# Exhibit 2

Lawrence R. LaPorte (SBN 130,003)
*laportel@dicksteinshapiro.com*
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Telephone: (310) 772-8300
Facsimile: (310) 772-8301

Attorneys for Plaintiff
MEGGITT (SAN JUAN CAPISTRANO),
INC.

Joseph A. Mandour, III (SBN 188,896)
*jmandour@mandourlaw.com*
Gordon E. Gray (SBN 175,209)
*ggray@mandourlaw.com*
Ben T. Lila (SBN 246,808)
*blila@mandourlaw.com*
MANDOUR & ASSOCIATES, APC
168 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 487-9300
Facsimile: (858) 487-9390

Ruixue Ran (admitted *pro hac* vice)
*ranrx@junhe.com*
Mark H. Chu (admitted *pro hac* vice)
*zhuxw@junhe.com*
JUN HE LAW OFFICES
China Resources Building, 20th Floor
8 Jianguomenbei Avenue
Beijing 100005 P.R. China
Telephone: (86) 10 8519 1300
Facsimile: (86) 10 8519 1350

Attorneys for Defendants
NIE YONGZHONG and XIAMEN NIELL
ELECTRONICS CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MEGGITT (SAN JUAN CAPISTRANO), INC.

        Plaintiff,

    v.

NIE YONGZHONG and XIAMEN NIELL ELECTRONICS CO., LTD.,

        Defendants.

Case No. SACV 13-0239 DOC (DFMx)

**[PROPOSED] JOINT PROTECTIVE ORDER**

Hon. David F. McCormick

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of trade secret, confidential, otherwise proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, because good cause exists, the Parties hereby petition the Court to enter the following Joint Protective Order ("Order").  The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles.  The Parties further acknowledge, as set forth in Paragraph 12.4, below, that this Order does not entitle them to file confidential information under seal.  Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

2.    DEFINITIONS

2.1   Challenging Party:  A Party or Non-Party that challenges the designation of information or items under this Order.

2.2   "CONFIDENTIAL" Information or Items:  Information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3   Designating Party:  A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL."

2.4   Disclosure or Discovery Material:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including,

among other things, testimony, transcripts, and tangible things), that are offered for inspection, produced, or generated in disclosures or responses to discovery in this matter.

2.5   <u>Expert</u>:  A person with specialized knowledge or experience in a matter pertinent to the litigation who: (1) has been retained by a Party or its Outside Counsel of Record to serve as an expert witness or as a consultant in this action; (2) is not a current employee of a Party; (3) is not a current employee of a Party's competitor; and (4) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.6   <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"</u> Information or Items:  Extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.7   <u>"HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~ MATERIAL"</u> Information or Items (also referred to as "Trade Secret Source Material"):  Extremely sensitive ""Confidential Information or Items" ~~representing computer source code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs~~" representing the source of trade secret material (*e.g.*, assembly instructions and computer source code), disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.8   In-House Counsel:  Attorneys who are employees of a Party to this action or a Party's parent company (if the Party is a wholly-owned subsidiary).

2.9   <u>Non-Party</u>:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10  <u>Outside Counsel of Record</u>:  Attorneys who are not employees of a Party to this action, but are retained to represent or advise a Party to this action and have formally appeared in this action on behalf of that Party.

2.11  <u>Party</u>:  Any Party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their paralegals, patent agents, and secretarial staff).

2.12  <u>Producing Party</u>:  A Party or Non-Party that offers for inspection or produces Disclosure or Discovery Material in this action.

2.13  <u>Professional Vendors</u>:  Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) located in the continental United States.

2.14  <u>Protected Material</u>:  Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL " "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL."

2.15  <u>Receiving Party</u>:  A Party that inspects or receives Disclosure or Discovery Material from a Producing Party.

3.    <u>SCOPE</u>

The protections conferred by this Order cover not only Protected Material (as defined above), but also: (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Outside Counsel of Record that might reveal Protected Material.  However, the protections conferred by this Order do not cover any information that is in the public domain at the time of the disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of the law or this Order.

4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of: (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other Parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations.  Except as otherwise provided in this Order (*See*, *e.g.*, the second paragraph of Section 5.2(a), below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.  Designation in conformity with this Order requires:

(a)    for information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other  discovery matters), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~ MATERIAL" to each page that contains protected material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" with the exception of ~~source code~~ Trade Secret Source Material, where such material shall be deemed "HIGHLY CONFIDENTIAL – SOURCE CODE" throughout the inspection.  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend  ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE MATERIAL") to each page that contains Protected Material.

(b)    for testimony given in deposition or in other discovery matters, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted.  When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to seven (7) days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted.

The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE MATERIAL."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party.  The Designating Party shall inform the court reporter of these requirements.  Any transcript that is prepared before the expiration of a seven (7) day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed, with the exception that any deposition in which a document or thing designated as "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODE MATERIAL" was used or which included "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODE MATERIAL" testimony will be designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODE MATERIAL" in its entirety unless otherwise agreed.  However, if a Non-Designating Party makes a request before the expiration of a seven (7) day period for designation, the Parties will work together to immediately identify testimony and exhibits that are not "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODE MATERIAL "

After the expiration of that period, the transcript shall be treated only as actually designated.  Any portion of a deposition transcript that contains information from a document or thing designated as "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODE MATERIAL" shall be separately bound from the transcript.

(c)    <u>for information produced in some form other than documentary and for any other tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY," or "HIGHLY CONFIDENTIAL – <u>TRADE SECRET</u> SOURCE ~~CODE~~<u>MATERIAL</u>."

    5.3    <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

    6.1    <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

    6.2    <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific.  The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly in accordance with Civil Local Rule 37-1.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality

1  designation was not proper and must give the Designating Party an opportunity (not
2  to exceed three (3) days after the Civil Local Rule 37-1 conference of counsel) to
3  review the designated material, to reconsider the circumstances, and, if no change in
4  designation is offered, to explain the basis for the chosen designation.

5       6.3  <u>Judicial Intervention</u>.  If the Parties cannot resolve a challenge without
6  court intervention, the Challenging Party shall file and serve a motion disputing the
7  confidentiality designation in accordance with Civil Local Rule 37-2.  In addition, the
8  Designating Party may file a motion to retain confidentiality at any time if there is
9  good cause for doing so.

10      The burden of persuasion in any such challenge proceeding shall be on the
11  Designating Party.  Frivolous challenges and those made for an improper purpose
12  (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may
13  expose the Challenging Party to sanctions.  All parties shall continue to afford the
14  material in question the level of protection to which it is entitled under the Producing
15  Party's designation until the court rules on the challenge.

16  7.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

17      7.1  <u>Basic Principles</u>.  A Receiving Party may use Protected Material that is
18  disclosed or produced by another Party or by a Non-Party in connection with this case
19  only for prosecuting, defending, or attempting to settle this litigation.  Such Protected
20  Material may be disclosed only to the categories of persons and under the conditions
21  described in this Order.  When the litigation has been terminated, a Receiving Party
22  must comply with the provisions of Paragraph 13, below.

23      Protected Material must be stored and maintained by a Receiving Party at a
24  location and in a secure manner that ensures that access is limited to the persons
25  authorized under this Order.

26      7.2  <u>Disclosure of "CONFIDENTIAL" Information or Items</u>.  Unless
27  otherwise ordered by the court or permitted in writing by the Designating Party, a

28

Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

     (a)    the Receiving Party's Outside Counsel of Record in this action;

     (b)    paralegals, patent agents, and secretarial staff employed by the Receiving Party's Outside Counsel of Record in this action, provided it is reasonably necessary to disclose the information to such person for this litigation and they have signed and returned the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

     (c)    two (2) designated In-House Counsel of the Receiving Party and two (2) other designated employees of the Receiving Party, provided it is reasonably necessary to disclose the information to such person for this litigation and they have signed and returned the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

     (d)    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

     (e)    the Court and its personnel;

     (f)    court reporters and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

     (g)    any mediator who is assigned by the Court to hear this matter, and his or her staff;

     (h)    Rule 30(b)(6) witnesses of the Producing Party regardless of whether the witness is the author or recipient of the document;

     (i)    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

     (ij)    any other person with the prior written consent of the Producing Party.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, information, documents, and things designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," shall be ~~disclosed~~subject to the provisions set forth in Paragraphs 7.3 and 7.4, and may be disclosed, subject to Paragraph 7.4, solely to the following persons:

(a)     the Receiving Party's Outside Counsel of Record in this action;

(b)     paralegals, patent agents, and secretarial staff employed by the Receiving Party's Outside Counsel of Record in this action, provided it is reasonably necessary to disclose the information to such person for this litigation and they have signed and returned the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party: (1) to whom disclosure is reasonably necessary for this litigation; (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (3) as to whom the procedures set forth in Paragraph 7.7(a), below, have been followed;

(d)     the Court and its personnel;

(e)     court reporters and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     any mediator who is assigned by the Court to hear this matter, and his or her staff;

(g)     Rule 30(b)(6) witnesses of the Producing Party regardless of whether the witness is the author or recipient of the document;

(h)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i)     any other person with the prior written consent of the Producing Party.

7.4    Procedures for Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  The following provisions apply to the production of information, documents, and things designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," unless otherwise agreed by the Producing Party:

(a)    Absent express written permission from the Producing Party, the Receiving Party may not create any electronic images, or any other images, or make electronic copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"  except as necessary to file, lodge, or otherwise submit documents with the Court (and any such electronic image/copy shall be immediately destroyed by the Receiving Party after the completion of any such filing, lodging, or submission);

(b)    The Receiving Party may not create more than six (6) physical copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY;"

(c)    When not in use, the Receiving Party's copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" must be kept in a secured, locked area at Outside Counsel of Record's offices in the continental United States.  The Receiving Party may also temporarily keep the copies at: (i) the Court for any proceedings(s) relating to the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material, but only for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material are taken, provided they are in the continental United States, and then only for the dates associated with the deposition(s); and (iii) any intermediate location in the continental United States reasonably necessary to transport the copies for a hearing or deposition in this litigation (*e.g.*, a hotel prior to a deposition).  The Receiving Party shall exercise due care in maintaining the security of the copies at these

temporary locations.  Under no circumstances shall any information, document, or thing designated "HIGHLY CONFIDENTIAL – ATTORNEYS ' EYES ONLY" obtained by the Receiving Party ever physically leave the continental United States.

(d)     The provisions of this Paragraph 7.4 apply equally to any information, document, or thing created or derived from information, documents, or things designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

7.5     Disclosure of "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, information, documents, and things designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL," shall be subject to the provisions set forth in Paragraphs 7.5 and 7.6, and may be disclosed, subject to Paragraph 7.6, solely to the following persons:

(a)     the Receiving Party's Outside Counsel of Record in this action;

(b)     paralegals, patent agents, and secretarial staff employed by the Receiving Party's Outside Counsel of Record in this action, provided it is reasonably necessary to disclose the information to such person for this litigation and they have signed and returned the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party: (1) to whom disclosure is reasonably necessary for this litigation; (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (3) as to whom the procedures set forth in Paragraph 7.7(a), below, have been followed;

(d)     the Court and its personnel;

(e)     court reporters and their staff who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     any mediator who is assigned by the Court to hear this matter, and has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     Rule 30(b)(6) witnesses of the Producing Party regardless of whether the witness is the author or recipient of the document;

(h)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i)     any other person with the prior written consent of the Producing Party.

7.6     Procedures for Disclosure of "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL" Information or Items.  The following provisions apply to the production of information, documents, and things designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL," unless otherwise agreed by the Producing Party:

(a)     All Trade Secret Source Material (*e.g.*, assembly instructions and source code of the Plaintiff) shall be made available by the PlaintiffProducing Party to the DefendantsReceiving Party in a secure room located at an office of the Plaintiff'sProducing Party's outside litigation counsel of record in this litigation located in Orange County, California. In such instance, the Plaintiff will be the Producing Party and the Defendants will be the Receiving Party

(a)(i) All source code of the Defendants shall be made available by the Defendants to the Plaintiff in a secure room located at an office of the Defendant's outside litigation counsel of record in this litigation located in Beijing, China. In such instance, the Defendants will be the Producing Party and the Plaintiff will be the Receiving Party.

(b)     No more than a total of four (4) individuals timely identified by the Receiving Party shall have access to the secure room in which the Producing Party produces its source codeTrade Secret Source Material at any one time.

(c)     For source code, the inspection shall take place on a secured, stand-alone computer equipped with a reasonably current version of Microsoft Windows operating system or Unix system, and an appropriate software platform for viewing the source code.  The secured, stand-alone computer shall not be equipped

with either Internet access or network access to other computers.  With the exception of a keyboard, mouse, and monitor, all access ports on the secured, non-network, stand-along computer shall be disabled to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any ~~source code~~Trade Secret Source Material outside or away from the secure room and/or computer on which source code is provided for inspection (hereinafter "Source Code Computer").  If necessary, the Source Code Computer may be configured by the Producing Party to run another mutually agreed upon operating system.

(d)    The Producing Party shall install tools that are sufficient for viewing and searching the source code produced and on the platform produced.  The Receiving Party's Outside Counsel and/or experts may request on a timely basis that other commercially available software tools for viewing and searching the source code be installed on the Source Code Computer, provided, however, that such tools are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with a storage device containing such licensed software tool(s) or other appropriate mechanism for obtaining the tool at least two (2) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.  The Receiving Party or its Expert(s) shall not at any time use any compilers, interpreters, or simulators in connection with the Producing Party's source code. The Producing Party shall not install any keystroke or other monitoring software on the Source Code Computer.

(e)    The Producing Party shall make the source code available electronically and in text searchable form.

(f)    Unless the Parties otherwise agree, the secure room and the Source Code Computer shall be made available from 9 a.m. to 7 p.m. local time, Monday through Friday (excluding holidays), until the close of the evidentiary record in this litigation.

(g)     Prior to the first inspection of a Producing Party's source code s Trade Secret Source Material, the requesting party shall provide the Producing Party two (2) business days' notice of its intent to access the Producing Party' s secure room and/or Source Code Computer.  This first inspection can take place over as many successive days as the Parties agree to, subject to modification during the inspection.  The requesting party shall provide two (2) business days' notice prior to any subsequent inspections of the same Producing Party's source codeTrade Secret Source Material. Subsequent inspections can take place over as many successive days as the Parties agree to, subject to modification during the inspection.

(h)     The Receiving Party may request copies of those portions of the Trade Secret Source Material (including source code) that are reasonably necessary to facilitate the preparation of court filings, pleadings, expert reports, deposition, as well as for hearing and deposition preparation/exhibits – but shall request copying of only such limited portions as are relevant to the claims and defenses in this case and are reasonably necessary for such purpose.  In particular, the Receiving Party shall not print source codeTrade Secret Source Material in order to review pages or blocks of source codeTrade Secret Source Material elsewhere in the first instance (*i.e.*, as an alternative to reviewing that source codeTrade Secret Source Material in the secure room).  To that end, the Receiving Party shall not request copies of more than three (3) consecutive pages of any document.

(i)     If the Producing Party objects that the portions requested for copying are excessive and/or are not being done for a permitted purpose, the Producing Party shall make such objection known to the Receiving Party within five (5) business days. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the request for copying of the source codeTrade Secret Source Material in question was in excess and/or for a non-permitted Purpose using the same procedure as set forth in Paragraph 6 (whereby the Producing Party is the

"Challenging Party" and the Receiving Party is the "Designating Party").  The burden shall be on the Receiving Party to demonstrate that the number of pages requested for copying is reasonable and not for an improper purpose.

(j)     The ~~source code~~Trade Secret Source Material sought to be copied shall be labeled with "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL."

The Producing Party will keep the originals of the copied documents, and copies shall be made for Outside Counsel within seven (7) days –unless an objection under Paragraph 7.6(i), above, is timely made.  If a timely objection is made, the Producing Party will retain the originals and all requested copies until the objection is decided by the Court.

(k)     Absent express written permission from the Producing Party, the Receiving Party may not create any electronic images, or any other images, or make electronic copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL"  except as necessary to file, lodge, or otherwise submit documents with the Court (and any such electronic image/copy shall be immediately destroyed by the Receiving Party after the completion of any such filing, lodging, or submission);

(l)     The Receiving Party may not create more than two (2) additional physical copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL;"

(m)     When not in use, ~~for the situation under 7.6(a),~~ the Receiving Party's copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL" must be kept in a secured, locked area at Outside Counsel of Record's offices in the continental United States.  ~~When not in use, for the situation under 7.6(a)(i), the Receiving Party's copies of any information, document, or thing designated "HIGHLY CONFIDENTIAL – SOURCE CODE" must be kept in a secured, locked area at~~

1   ~~Outside Counsel of Record's offices in the People's Republic of China.~~ The

2   Receiving Party may also temporarily keep the copies at: (i) the Court for any

3   proceedings(s) relating to the "HIGHLY CONFIDENTIAL – TRADE SECRET

4   SOURCE ~~CODE~~MATERIAL," but only for the dates associated with the

5   proceeding(s); (ii) the sites where any deposition(s) relating to the "HIGHLY

6   CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL" are taken,

7   provided they are in the continental United States, and then only for the dates

8   associated with the deposition(s); and (iii) any intermediate location in the

9   continental United States reasonably necessary to transport the copies for a hearing

10  or deposition in this litigation (*e.g.*, a hotel prior to a deposition).  The Receiving

11  Party shall exercise due care in maintaining the security of the copies at these

12  temporary locations. ~~Except for the purpose of taking depositions in Hong Kong and~~

13  ~~subject to the laws and regulations of the United States relating to the export of~~

14  ~~technical data contained in such Protected Material, under~~Under no circumstances

15  shall any information, document, or thing designated "HIGHLY CONFIDENTIAL –

16  TRADE SECRET SOURCE ~~CODE~~ MATERIAL" obtained by the Receiving Party

17  ~~under 7.6(a)~~ ever physically leave the continental United States. ~~Except for the~~

18  ~~purpose of taking depositions in Hong Kong and subject to the laws and regulations~~

19  ~~of the People's Republic of China relating to the export of technical data contained in~~

20  ~~such Protected Material, under~~ ~~no circumstances shall any information, document, or~~

21  ~~thing designated "HIGHLY CONFIDENTIAL –~~ ~~SOURCE CODE" obtained by the~~

22  ~~Receiving Party under 7.6(a)(i) ever physically leave the~~ ~~People's Republic of China.~~

23          (n)     The provisions of this Paragraph 7.6 apply equally to any information,

24  document, or thing created or derived from information, documents, or things

25  designated "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE

26  ~~CODE~~MATERIAL."

27          (o)     The Receiving Party shall be entitled to take notes relating to the ~~source~~

28  ~~code~~Trade Secret Source Material (subject to all of the restrictions contained herein),

1   but may not block copy the ~~source code~~Trade Secret Source Material into the notes.

2   No copies of all or any portion of the ~~source code~~Trade Secret Source Material may

3   leave the room in which the ~~source code~~Trade Secret Source Material is inspected

4   except as otherwise provided herein.  The Producing Party may visually, but not

5   otherwise, monitor the activities of the Receiving Party's representatives during any

6   ~~source code~~Trade Secret Source Material review, but only to ensure that no

7   information concerning the ~~source code~~Trade Secret Source Material is being created

8   or transmitted in any way.  The Producing Party may not observe or inspect the

9   Receiving Party's notes or monitor the portions of ~~source code~~Trade Secret Source

10  Material reviewed by the Receiving Party's representative.

11      (p)     Other than as provided in this Order, the Receiving Party will not copy,

12  remove, or otherwise transfer any ~~source code~~Trade Secret Source Material from the

13  secure room, including, without limitation, copying, removing, or transferring the

14  ~~source code~~Trade Secret Source Material onto any recordable media or recordable

15  device, including without limitation sound recorders, computers, cellular telephones,

16  peripheral equipment, cameras, CDs, DVDs, or drives of any kind.  The Receiving

17  Party will not transmit any ~~source code~~Trade Secret Source Material in any way from

18  the Producing Party's secured facilities or the offices of the Producing Party's Outside

19  Counsel located in the continental United States;

20      (q)     The Producing Party shall provide representatives of the Receiving

21  Party performing the inspection of the ~~source code~~Trade Secret Source Material with

22  access to another secure location in the same building as the secure room to store

23  personal belongings.  The Producing Party shall not be permitted to observe or record

24  the activities of the Receiving Party's representative(s) while in the secure location,

25  and shall permit the representative(s) to access the secure location on an "as needed"

26  basis.  Unless otherwise agreed in advance by the Parties in writing, at the end each

27  day on which inspection is done under this Order, the Receiving Party's Outside

28

1 Counsel and/or Expert(s) shall remove all notes, documents, and all other materials

2 from the secure room.

3     7.7    Procedures for Approving or Objecting to Disclosure of "HIGHLY

4 CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –

5 TRADE SECRET SOURCE ~~CODE~~MATERIAL" Information or Items to Experts.

6     (a)    Unless otherwise ordered by the Court or agreed to in writing by the

7 Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order)

8 any information or item that has been designated "HIGHLY CONFIDENTIAL –

9 ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – TRADE SECRET

10 SOURCE ~~CODE~~MATERIAL" pursuant to Paragraph 7.3(c) or 7.5(c) must first make

11 a written request to the Designating Party that: (1) identifies the general categories of

12 "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

13 CONFIDENTIAL – TRADE SECRET SOURCE ~~CODE~~MATERIAL" information

14 that the Receiving Party seeks permission to disclose to the Expert; (2) sets forth the

15 full name of the Expert and the city and state of his or her primary residence; (3)

16 attaches a copy of the Expert's current resume or *curriculum vitae*; (4) identifies the

17 Expert's current employer(s); and (5) identifies each person or entity from whom the

18 Expert has received compensation or funding for work in his or her areas of expertise

19 or to whom the expert has provided professional services, including in connection with

20 a litigation, at any time during the preceding five (5) years.[1]

21     (b)    A Party that makes a request and provides the information specified in

22 the preceding respective paragraphs may disclose the subject Protected Material to

23 the Expert unless, within seven (7) days of delivering the request, the Party receives a

24

25 [1] If the Expert believes any of this information is subject to a confidentiality obligation

26 to a third-party, then the Expert should provide whatever information the Expert
believes can be disclosed without violating any confidentiality agreements, and the

27 Party seeking to disclose to the Expert shall be available to meet and confer     with the

28 Designating Party regarding any such engagement.

written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

(c)     A Party that receives a timely written objection must meet and confer with the Designating Party to try to resolve the matter by agreement within three (3) business days of the written objection.  No further conference of counsel will be required under Civil Local Rule 37-1.  If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 37-2 seeking permission from the court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk.

In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

7.8     <u>Restrictions on the use of Protected Material</u>.  The restrictions on the use of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and "HIGHLY CONFIDENTIAL – <u>TRADE SECRET</u> SOURCE ~~CODE~~<u>MATERIAL</u>" Disclosure or Discovery Material established by this Order are applicable only to Disclosure or Discovery Material received by a Party from another Party or from a Non-Party as a direct result of this litigation.  A Party is free to do whatever it desires with its own "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – <u>TRADE SECRET</u> SOURCE ~~CODE~~<u>MATERIAL</u>" Disclosure or Discovery Materials in its sole and complete discretion.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL," that Party must:

(a)    promptly notify in writing the Designating Party.  Such notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[2]

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material.

---

[2] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – TRADE SECRET SOURCE CODEMATERIAL."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.     make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this Court within ten (10) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately: (1) notify in writing the Designating Party of the unauthorized disclosures; (2) use its best efforts to retrieve all unauthorized copies of the Protected Material; (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (4) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

Pursuant to Rule 502 of the Federal Rules of Evidence, the inadvertent production of documents subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection from disclosure will not waive the privilege or protection from disclosure.  In addition, the Parties agree that if a document subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure is included in documents made available for inspection, such disclosure shall not be considered a waiver of the privilege or protection from disclosure.

The Producing Party must notify the receiving Party within seven (7) business days of becoming aware of the inadvertent disclosure of privileged or protected information.  Upon a request from a Party that has inadvertently produced any document that it believes is subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection from disclosure, each Party receiving said document shall return it and all physical copies  to the Producing Party and destroy all electronic copies within ten (10) business days. Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addressee(s), and topic of the document and such other information as is reasonably necessary to identify the document and describe its

nature to the Court in any motion to compel production of the document.  Such a record of the identity and nature of a document may not be made or used for any purpose other than preparation of a motion to compel in this Action.  Any other information in the document may not be used for any purpose in this Action.  After the return of the document(s), the Receiving Party may challenge the Producing Party's claim(s) of privilege, protection, or work-product by making a motion to the Court.

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the Parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the Parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.   MISCELLANEOUS

12.2   Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2   Right to Assert Other Objections.  By stipulating to the entry of this Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

12.3   Export Control.  Disclosure of Protected Material shall be subject to all applicable United States ~~and the People's Republic of China~~ laws and regulations relating to the export of technical data contained in such Protected Material, including

the release of such technical data to foreign persons or nationals in ~~each country~~the United States or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

12.4   <u>Filing Protected Material</u>.  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law.

13.   <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in Paragraph 4, each Receiving Party must return all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  The Receiving Party must also submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that: (1) identifies (by category, where appropriate) all the Protected Material that was returned; and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

14.   <u>RETROACTIVE EFFECT</u>

This Order shall apply retroactively to the date the instant Action was filed. All materials produced during the course of the Action prior to the execution of this Order that were designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

1   – ATTORNEYS' EYES ONLY" shall be subject to the terms and conditions of this

2   Order.

3

4   PURSUANT TO STIPULATION, IT IS SO ORDERED.

5

6

7   Dated:  February ____, 2014     By: _____

8                                           Hon. David F. McCormick
                                            United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCSLA-114885v1                         - 26 -                    JOINT STIPULATED PROTECTIVE ORDER

Document comparison by Workshare Professional on 2014年1月28日 17:59:07

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://JHCMS1.BJJUNHE.COM/JUNHE/3258892/6 |
| Description | #3258892v6<JUNHE> - Joint_Protective_Order_(Niell-Tech)_(Final_Version)_2014_01_26 |
| Document 2 ID | interwovenSite://JHCMS1.BJJUNHE.COM/JUNHE/3254458/3 |
| Description | #3254458v3<JUNHE> - DOCSLA-#115448-v4-Joint_Stipulated_Protective_Order_(Meggitt)_(Final_Version) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 126 |
| Deletions | 72 |
| Moved from | 5 |
| Moved to | 5 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 208 |